IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
_____ DIVISION

Case No: _____

| | |
|---|---|
| THE SOCIAL SCIENCE HISTORY ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>DUKE UNIVERSITY,<br><br>Defendant. | **COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff The Social Science History Association ("SSHA"), by and through its counsel, complaining of Defendant Duke University ("Duke"), alleges and says:

## PARTIES

1.  Plaintiff SSHA is a non-profit corporation organized and existing under the laws of the State of Michigan.

2.  Upon information and belief, Defendant Duke is a non-profit corporation organized and existing under the laws of the State of North Carolina, with its primary place of business located in Durham, Durham County, North Carolina.

3.  Upon information and belief, at all times mentioned herein, Defendant Duke has acted under the name of Duke University Press ("DUP"), DUP having its primary place of business located at 905 W. Main Street, Suite 18B, Durham, Durham County, North Carolina. Upon information and belief, DUP is not a separate entity from Duke University itself. Upon information and belief, the officers and employees of DUP are agents and/or employees of Duke University. (Duke University and DUP shall be collectively referred to herein as "Duke").

## JURISDICTION AND VENUE

4. This is an action for, *inter alia*, copyright infringement under 17 U.S.C. §§ 501 *et seq.*, false designation of origin under 15 U.S.C. § 1125, and declaratory judgment to adjudicate actual, judiciable controversies between the parties under 28 U.S.C. §§ 2201-2202. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

5. Duke resides in and regularly engages in business in North Carolina. The Court has personal jurisdiction over Duke.

6. Duke regularly engages in business in this judicial district. Venue for this action is therefore properly laid in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

7. Plaintiff SSHA is an academic association largely comprised of an interdisciplinary group of scholars who share interests in social life and theory, historiography, and historical and social-scientific methodologies.

8. Since 1976, SSHA has published an academic journal (hereafter "Journal") under the mark SOCIAL SCIENCE HISTORY. Over the same time period, SSHA has provided collective membership services, annual academic conferences, grants, and scholarships under its SOCIAL SCIENCE HISTORY ASSOCIATION mark. As a result of all of this, SSHA has built a strong reputation and is recognized as a thought leader in the academic community and the mark SOCIAL SCIENCE HISTORY ASSOCIATION has established significant goodwill and association with SSHA.

9. Since SSHA was founded in 1976, thousands of scholars have attended academic conferences sponsored by SSHA under the mark SOCIAL SCIENCE HISTORY ASSOCATION.

10. Likewise, SSHA's Journal is a widely read and well respected academic publication. Hundreds of scholars subscribe to the Journal and it is available in many academic libraries. Thousands of academics rely on the Journal as part of their own research and cite to the Journal in their own publications. The *Times Higher Education* recognized the Journal as the fourth-ranked publication in the history profession in the decade spanning 2000 to 2010.

11. SSHA began publishing the Journal at least as early as 1976 through publishers other than Duke.

12. Beginning in or about the mid to late 1980s, Duke began printing and distributing the Journal on behalf of SSHA.

13. Upon information and belief, SSHA and Duke initially entered into successive contracts for Duke to print and distribute SSHA's Journal, each of which contracts had a one year term.

14. On or about April 16, 1996, Plaintiff SSHA and Duke entered into a written agreement relating to the printing and distribution of the Journal, denominated as "Editing and Publishing Agreement for Social Science History" (herein "Publishing Agreement"). The Publishing Agreement was made in the State of Michigan.

15. Duke drafted the Publishing Agreement, a true and accurate copy of which is attached hereto as Exhibit A.

16. Pursuant to section four of the Publishing Agreement entitled "Period of the Agreement" the Publishing Agreement became effective as of January 1, 1996 for a period of five years. [Ex. A. at 2.] Thereafter, the Publishing Agreement would be automatically renewed each year unless one of the parties provided eighteen months' prior notice that the Publishing Agreement would not be automatically renewed. [*Id.*] The reason for such lengthy advance

notice was to allow the parties sufficient time to transition publication duties and responsibilities. [*Id.*]

17. Upon information and belief, section four of the Publishing Agreement was drafted by Duke and reflects boilerplate language that Duke inserted in many of its publishing agreements.

18. With regard to ownership of the Journal, the Publishing Agreement expressly provides "[o]wnership and copyright in all issues of the [J]ournal produced by Duke shall belong to SSHA during the lifetime of this Agreement." [Ex. A. at 2.] The Publishing Agreement further recognizes that all mailing lists and subscriptions related to the Journal return to SSHA when the Agreement ends. [Ex. A. at 3.]

19. Consistent with the Publishing Agreement, at no time has Duke ever held an ownership interest in the Journal, or held any intellectual property rights in the Journal.

20. At no time prior to the execution of the Publishing Agreement did Duke ever inform SSHA that Duke interpreted or intended the Publishing Agreement to grant Duke a permanent or perpetual right to publish the Journal.

21. At all times relevant hereto, Plaintiff SSHA was, and is, the owner of the Journal, including holding all intellectual property rights in the Journal.

22. Pursuant to the terms of the Publishing Agreement, Duke had the right to sell all "in print" issues of the Journal and collect all related revenues while the Agreement was in force and effective. [Ex. A.] The Publishing Agreement does not grant Duke the right to sell and collect revenue concerning electronic versions of the Journal.

23. During the year 2011 (and prior thereto), employees at Duke acknowledged that SSHA had the right to end the Publishing Agreement and publish the Journal with another company. Duke also acknowledged that it had no ownership interest in the Journal.

24. In 2011, SSHA sent a Request for Proposals to various presses, including Duke, to seek bids for publication of the Journal after the contract with Duke expired.

25. Duke failed to respond to SSHA's Request for Proposals.

26. On or about June 22, 2012, SSHA gave timely notice to Duke that it was exercising its right not to renew the Publishing Agreement and that the Publishing Agreement with Duke will end on December 31, 2013.

27. The June 22, 2012 notification means that the Publishing Agreement will terminate on December 31, 2013 and that SSHA has the right to publish its Journal with another publisher beginning with the 2014 volume.

28. In a surprise move, Duke disputes SSHA's right to terminate the Publishing Agreement and publish the Journal through another publishing house. Duke effectively claims that all SSHA can do pursuant to paragraph 4 of the Agreement is either to continue with Duke as the sole publisher in perpetuity or give up its ownership of the Journal altogether and allow Duke to continue to publish the Journal, even though Duke has no ownership or intellectual property rights in the Journal.

29. In another remarkable move, Duke now claims that it has the right, under the terms of the Publishing Agreement, to "assume full ownership of and responsibility for the journal as of the 2014 volume." Duke is attempting to use the Publishing Agreement as a pretext to wrongfully assert ownership over the Journal to the exclusion of SSHA for the sole use and benefit of Duke.

5

Case 5:13-cv-00157-BO   Document 1   Filed 03/04/13   Page 5 of 11

30. SSHA disagrees with Duke's new and self-serving interpretation of the Publishing Agreement. The Publishing Agreement does not grant Duke the right to assume ownership or responsibility of the Journal in the event the Publishing Agreement is not renewed.

31. At no time has Plaintiff SSHA ever granted to Duke any ownership in the Journal, yet Duke's interpretation of the Publishing Agreement would divest SSHA of its scholarly Journal in the event SSHA replaces Duke as the publisher of the Journal.

32. A controversy exists between SSHA and Duke regarding these issues.

**FIRST CLAIM**
**DECLARATORY JUDGMENT FOR CONTRACTUAL OBLIGATIONS**
**28 U.S.C. §§ 2201-2202**

33. SSHA repeats and realleges, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

34. There is an actual, justiciable controversy concerning SSHA's and Duke's rights and obligations pursuant to the Publishing Agreement, specifically regarding (1) whether the Publishing Agreement will be terminated on December 31, 2013, (2) whether Duke has any right to continue publishing and distributing the Journal after December 31, 2013, and (3) whether Duke has any ownership rights in the Journal.

35. SSHA, as a party to a contract, now prays that the Court determine the contractual rights of the parties under the Publishing Agreement, and grant to the parties a declaration of the rights, status, or other legal relations thereunder.

36. In addition, SSHA prays that the Court issue such other and further relief as may be necessary and proper to effect and protect the rights of SSHA pursuant to the Publishing Agreement to terminate its contractual relationship with Duke and continue publishing its academic journal.

## SECOND CLAIM
## COPYRIGHT INFRINGEMENT
## 17 U.S.C. § 501 ET SEQ.

37. SSHA repeats and realleges, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

38. SSHA holds copyrights in all issues of the Journal published from 1976 to the present. Upon information and belief, all or most of those copyrights have been registered in the name of SSHA.

39. The Publishing Agreement executed on April 16, 1996 between SSHA and Duke did not authorize Duke to publish or distribute the Journal in electronic format.

40. Duke has no right to make electronic derivatives or to publish, distribute, or sell electronic copies of the Journal.

41. Duke continues to publish and distribute electronic copies of the Journal on its website and through other electronic media.

42. Duke's electronic publication and dissemination of the Journal constitutes infringement of SSHA's copyrights.

43. Upon information belief, Duke's continued electronic publication and distribution of the Journal was willful.

44. SSHA is entitled to an accounting of all royalties and profits received by Duke from its electronic publication and distribution of the Journal. SSHA seeks disgorgement of all Duke's wrongfully obtained royalties and profits.

45. SSHA is also entitled to elect to pursue statutory damages in the amount of up to $150,000 for each previously registered work infringed upon by Duke.

## THIRD CLAIM
### DECLARATORY JUDGMENT FOR COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 501 ET SEQ. AND 28 U.S.C. §§ 2201-2202

46. SSHA repeats and realleges, as if set forth fully herein, each and every allegation contained in the foregoing paragraphs.

47. Duke has informed SSHA that it intends to continue to publish and distribute the Journal following termination of the Publishing Agreement on December 31, 2013.

48. Duke's plan to publish and distribute the Journal following termination of the Publishing Agreement would constitute infringement of SSHA's copyrights.

49. There is an actual, justiciable controversy between the parties concerning whether Duke's proposed future conduct constitutes copyright infringement.

50. Pursuant to 28 U.S.C. §§ 2201-2202, SSHA seeks a declaratory judgment from the Court holding that Duke has no right to publish and distribute the Journal or any content therefrom following termination of the Publishing Agreement on December 31, 2013.

## FOURTH CLAIM
### DECLARATORY JUDGMENT FOR FALSE DESIGNATION OF ORIGIN
### 15 U.S.C. § 1125(a)

51. SSHA repeats and realleges, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

52. SSHA has published the Journal under the name SOCIAL SCIENCE HISTORY since 1976. At the same time, SSHA has also sponsored collective membership, annual academic conferences, grants, scholarships, and awards under the name SOCIAL SCIENCE HISTORY ASSOCIATION. Thousands of academics read and rely upon the Journal and attend SSHA's academic conferences. As a result, SSHA has built up considerable goodwill in its SOCIAL SCIENCE HISTORY and SOCIAL SCIENCE HISTORY ASSOCIATION marks.

53. Duke has communicated to SSHA that it intends to continue publishing and distributing the Journal under the name SOCIAL SCIENCE HISTORY after the Publishing Agreement is terminated on December 31, 2013 without SSHA's consent.

54. Duke's proposed course of conduct with respect to unauthorized use of SSHA's SOCIAL SCIENCE HISTORY trademark is likely to cause confusion, mistake, and deception as to the origin, sponsorship, or approval of the Journal.

55. There is an actual, justiciable controversy between the parties concerning whether Duke's proposed conduct constitutes false designation of origin.

56. Pursuant to 28 U.S.C. §§ 2201-2202, SSHA seeks a declaratory judgment from the Court holding that Duke has no right to use SSHA's SOCIAL SCIENCE HISTORY or SOCIAL SCIENCE HISTORY ASSOCIATION marks or any marks confusingly similar thereto following termination of the Publishing Agreement on December 31, 2013.

**FIFTH CLAIM FOR RELIEF**
**SPECIFIC PERFORMANCE**

57. SSHA repeats and realleges, as if set forth fully herein, each and every allegation contained in the foregoing paragraphs.

58. The Publishing Agreement obligates Duke to register copyrights for the Journal in SSHA's name with the United States Copyright Office.

59. SSHA has requested the copyright registrations and supporting deposit material for its copyrights in the Journal from Duke.

60. Despite SSHA performing all of its obligations under the Publishing Agreement, Duke has not provided SSHA the requested copyright registrations and supporting deposit material.

9
Case 5:13-cv-00157-BO   Document 1   Filed 03/04/13   Page 9 of 11

61. SSHA asks the Court to compel Duke to produce SSHA's original copyright registrations and deposit materials.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully prays the Court to:

A. Enter a declaratory judgment in Plaintiff's favor as requested herein;

B. Enter an order defining the responsibilities and rights of the parties under the Publishing Agreement;

C. Permanently enjoin Duke from infringing Plaintiff's copyrights and trademarks;

D. Award Plaintiff its damages for Defendant's infringement of its copyrights and trademarks by ordering disgorgement of Defendant's profits and/or statutory damages for copyright and/or trademark infringement;

E. Order Defendant to convey to Plaintiff its original copyright registrations and deposit materials;

F. Award Plaintiff its costs and attorneys' fees to the extent allowed by law; and

G. Award Plaintiff such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

SSHA demands a trial by jury be held on all issues so triable.

**The Law Office of John T. Benjamin Jr., P.A.**

By: s/William E. Hubbard
William E. Hubbard
N.C. State Bar No.: 23,605
1115 Hillsborough Street
Raleigh, North Carolina 27603
Telephone: (919) 755-0060
Facsimile: (919) 755-0069
Email: hubbard@lawjtb.com

**Coats and Bennett, PLLC**

By: s/Anthony J. Biller
Anthony J. Biller
N.C. State Bar No.: 24,117
James R. Lawrence, III
N.C. State Bar No.: 44,560
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084
Email: abiller@coatsandbennett.com
jlawrence@coatsandbennett.com

ATTORNEYS FOR SOCIAL SCIENCE HISTORY ASSOCIATION