IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-157-BO

| | | |
|---|---|---|
| THE SOCIAL SCIENCE HISTORY ASSOCIATION, Plaintiff, | ) ) ) ) | |
| v. | ) ) | **ORDER** |
| DUKE UNIVERSITY, Defendant. | ) ) ) | |

This cause comes before the Court on plaintiff's and defendant's motions for summary judgment. The parties have filed their responses and replies and the matters are ripe for review. For the reasons discussed below, both motions are granted in part and denied in part.

## BACKGROUND

Plaintiff is a Michigan non-profit organization and the editor of an academic journal, *Social Science History*, which has been published by Duke University Press since the 1980s. In the 1990s, plaintiff encountered financial difficulties but wanted to continue to publish its journal. In 1996, plaintiff and Duke Press entered into an editing and publishing agreement to memorialize plaintiff's wish to no longer retain ultimate financial responsibility for the journal and Duke Press' willingness to take on that financial responsibility. The agreement lays out the roles of the parties with plaintiff as the editor responsible for content and Duke as the publisher and also the party responsible for membership record keeping and collection of dues, half of which would be paid to plaintiff by Duke at the end of each fiscal year. The 1996 agreement was to remain in effect for at least five years, and thereafter it was to automatically renew each year

"until one of the parties provides notice to the other that it wishes to discontinue its participation in the journal," such notice to be provided in essence eighteen months before it took effect. [DE 31-1]. Duke has been publishing the journal since the parties entered into the 1996 agreement.

In 2011, plaintiff sent out requests for proposals to several academic publishers, including Duke, to solicit new bids for publishing services. By letter dated June 22, 2012, plaintiff gave Duke written notification that it wished to "discontinue its participation with Duke University Press in publishing its journal *Social Science History* made April 16, 1996" and that the agreement "shall not be automatically renewed after the conclusion of the calendar year 2013." [DE 43-4]. By letter dated July 5, 2012, Duke notified plaintiff that its understanding of plaintiff's letter was "that [plaintiff] will fully discontinue its participation in *Social Science History* at the end of the 2013 volume, and that Duke University Press will assume full ownership of and responsibility for the journal as of the 2014 volume . . .." [DE 43-2].

Plaintiff thereafter filed the instant action alleging claims for declaratory judgment as to contractual obligations, breach of contract, copyright infringement, accounting and disgorgement for unjust enrichment, declaratory judgment of copyright infringement, declaratory judgment for false designation of origin under the Lanham Act, and for specific performance. Duke answered the complaint and filed counterclaims for anticipatory breach of contract, a declaration that plaintiff has discontinued its participation in the journal, and breach of contract. Plaintiff seeks summary judgment on its first claim and Duke's first and second counterclaims, and asks that the Court declare that it can terminate its relationship with Duke commencing in 2014. Duke seeks summary judgment in its favor on plaintiff's second through seventh claims for relief as well as on its third counterclaim. Duke further seeks summary judgment in its favor on plaintiff's first and its first and second counterclaims for relief.

2

**DISCUSSION**

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 252 (1986). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

I. CONTRACT CLAIMS

A. *Contractual Obligations*

Plaintiff's first claim for relief seeks declaratory judgment as to the obligations of the parties under the 1996 agreement, specifically in regard to the termination of the agreement. 28 U.S.C. §§ 2201-2202. "A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). Summary judgment is only appropriate where the contract is unambiguous or where any ambiguities can be definitively resolved by extrinsic

3

evidence. *Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007). The parties agree the Michigan law governs the 1996 contract. *See Klaxon Co. v. Stenor Elec. Mfg.*, 313 U.S. 487, 496-97 (1941). Under Michigan law, interpretation of a contract requires first and foremost an understanding of the intention of the parties, and to properly interpret particular language within the contract, a court must consider the entire contract. *McIntosh v. Groomes*, 227 Mich. 215, 218, 198 N.W. 954, 955 (1924). A court determines the intent of the parties by affording the language of the contract its plain and ordinary meaning. *In re Smith Trust*, 480 Mich. 19, 24, 745 N.W.2d 754, 758 (2008).

The 1996 agreement clearly indicates that, irrespective of the financial arrangement, plaintiff remained the owner and editor of the content of the journal. The journal was to be published by Duke expressly "on behalf of [plaintiff]," and upon termination of the agreement, ownership of all extant issues, all contracts with third parties relating to extant issues, and all copyrights in extant issues would return to plaintiff. Paragraph six of the agreement expressly reserves to plaintiff "ownership and copyright in all issues of the journal produced by Duke during the lifetime of this Agreement."

Under Duke's interpretation of the agreement, the following language – "until one of the parties provides notice to the other that it wishes to discontinue its participation in the journal" – should be interpreted to provide that once either party elects to withdraw from the contract, the party remaining would retain control over and ownership of the journal. Indeed, if considered in isolation, such language could be interpreted to have the effect posited by Duke. However, in accordance with Michigan law, the Court need not consider such language in isolation in order to understand its plain meaning. Rather, having considered the contract as a whole, including the clearly expressed intent that the rights to the journal and its contents remain with plaintiff, the

4

above-referenced language is properly interpreted to refer to either party's intent to withdraw from participation in the terms of the agreement, without effect on plaintiff's ownership of the journal. The Court thus holds that the intention of the parties as evidenced by the agreement is plain and unambiguous, and that summary judgment in favor of plaintiff on its first claim for relief for declaratory judgment is therefore appropriate. In light of this holding, summary judgment for plaintiff is appropriate on Duke's first and second counterclaims for anticipatory breach of contract and for declaratory judgment that plaintiff has discontinued its participation in the journal.

B. *Breach of Contract*

Plaintiff's second claim for relief is for breach of contract. Plaintiff alleges that Duke breached the express terms of the contract by publishing the journal electronically, by failing to provide copyright registrations to plaintiff upon demand, and by failing to provide plaintiff with membership lists upon demand. The elements of breach of contract under Michigan law are (1) the existence of a contract, (2) the terms of which require some performance, (3) a party who has breached the terms of the contract, and (4) which breach caused injury to the other party. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.2d 815, 819 (6th Cir. 1999). While Michigan law recognizes an implied covenant of good faith and fair dealing in the performance and enforcement of contracts, it does not recognize a claim for breach of such implied covenant separate from an action on the underlying contract, nor can the implied covenant override express contract terms. *Burton v. William Beaumont Hosp.*, 373 F. Supp.2d 707, 718-19 (E.D.Mich. 2005). Plaintiff's breach of contract claim insofar as it is based on any breach of the implied covenant of good faith and fair dealing therefore fails.

5

Case 5:13-cv-00157-BO   Document 76   Filed 07/11/14   Page 5 of 12

i.  *Electronic Publishing*

Plaintiff alleges that Duke has breach the 1996 agreement by publishing and distributing the journal electronically. Duke contends that pursuant to the publishing and editing agreement it was authorized to electronically publish the journal and license it. Paragraph six of the agreement expressly provides Duke with the right to sell all in-print issues of the journal, set prices as it sees fit, and collect all related revenues. The same paragraph further provides Duke with the right to license the use of the copyrighted material by a third party on a nonexclusive basis and to set and collect any related permission fees.

In 2001, plaintiff contacted Duke to inquire about participation in a digital library collection by JSTOR, and the journal was added to JSTOR's digital library pursuant to plaintiff's request. Cohn Dec. ¶ 15 [DE 53-2]; 14 Nov. 2003 Rep. of Pl's Publications Committee Meeting ¶ 5 (committee gave its approval for electronic availability through JSTOR); ¶ 6 (committee endorsed offer to add journal to JSTOR's arts and science complement) [DE 54-3]. Again with plaintiff's consent, Duke made the journal available in electronic form through Project Muse, another electronic publisher/distributor. Cohn Dec. ¶ 16 [DE 53-2]. In July 2004, Duke notified plaintiff's members of electronic access to the journal available through JSTOR and Project Muse. [DE 53-12]. Such action was specifically addressed at a meeting between plaintiff and Duke held later that month. [DE 53-11].

Annual marketing reports provided by Duke to plaintiff reflect usage statistics for the electronic publication or distribution of the journal, and annual financial reports provided to plaintiff by Duke reflect the membership fees and revenues collected by Duke related to electronic publication or distribution of the journal. Dilworth Dec. ¶¶ 7-11 [DE 53-13]; Ex. A & B to Dilworth Dep. [DE 53-14 & 53-15]. The annual reports further include information such as

6

the ten most frequently read articles accessed through electronic distributors; the revenue generated through royalties, electronic distribution, as well as direct subscriptions; and the number of electronic subscriptions, both domestic and international, for volumes beginning in 1999. *Id.* Prior to March 4, 2013, Duke was not notified that plaintiff challenged its authority to publish or distribute the journal electronically or collect revenues associated with such actions. *Id.* ¶¶ 19-20.

While the agreement does not expressly provide Duke with the right to electronically publish the journal, such authorization is implied by the plain terms of the agreement and is evidenced by the actions of the parties. Though the relevant contract provision is subject to different interpretations and is therefore properly construed as ambiguous, the extrinsic evidence makes clear that such provision would include the publication and distribution of the journal in electronic format. That the parties discussed the availability of electronic publishing at the time they entered into the agreement, [DE 53-3], and that plaintiff was aware through both annual updates and discussions with Duke that Duke was making the journal available in electronic form since at least 1999 and was collecting revenues accordingly is evidence of the parties' mutual understanding that the electronic publishing or distribution of the journal would be permitted under the agreement. Indeed, when asked whether plaintiff had agreed that Duke could "license the content of the journal to electronic publications platforms," plaintiff's former executive director responded in the affirmative. Austin Depo. at 85 [DE 72-1].

Plaintiff has presented no evidence that either party construed the contract otherwise, and the Court notes that plaintiff challenged Duke's electronic distribution as beyond the scope of its publishing authorization only after plaintiff had attempted to withdraw from the 1996 agreement and was facing Duke's contrary interpretation of plaintiff's right to do so. Duke's evidence

7

provides a sufficient basis upon which to find that both parties understood the 1996 agreement to authorize Duke to electronically publish and distribute the journal, and thus plaintiff's claim for breach of contract due to Duke's electronic publishing and collection of related revenues fails.

ii. *Copyright Registration*

In regard to the copyright registration claim, a plain reading of the agreement reveals no term that required Duke to provide plaintiff with copies of copyright registration. The agreement does expressly provide that Duke was obligated to register the copyrights in plaintiff's name for the issues it produced, but plaintiff has not alleged that Duke failed to register or properly register any of the copyrights for any issue it produced, and thus plaintiff has not alleged that Duke has breached a term of the agreement. Nor has plaintiff demonstrated that by failing to provide it with copies of the copyright registrations Duke has caused plaintiff to suffer any harm.

iii. *Membership Lists*

Paragraph fourteen of the agreement states that "Duke shall provide to [plaintiff] at no cost a monthly printed listing of all current members . . .." Duke contends that, prior to the filing of the complaint, it provided plaintiff with updated membership lists in February and October 2013, and that any failure to provide additional membership lists constitutes an immaterial breach. Plaintiff responds that such failure to provide membership lists is a material breach. "In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive." *Omnicom of Michigan v. Giannetti Inv. Co.*, 221 Mich. App. 341, 348, 561 N.W.2d 138, 141 (1997). A court may also consider whether and the extent to which the injured party can be compensated for lack of complete performance and whether there has been partial performance. *Id.*

The Court finds that, even in light of any failure to provide plaintiff with membership lists, plaintiff ultimately received the benefit it reasonably expected to receive when it entered into the 1996 agreement. Indeed, Duke has published the journal for approximately fifteen years, plaintiff has not alleged that Duke failed to register appropriate copyrights in its name, nor has plaintiff come forward with any evidence that Duke has failed to pay plaintiff its portion of membership dues during the lifetime of the agreement. While Duke's failure to provide membership lists to plaintiff may have been a breach of the agreement, such breach was not material. Moreover, Duke has demonstrated that it provided plaintiff with membership lists in January, February, and October 2013. [DE 53-19; 53-20]. This partial performance further supports that the breach of the membership list term was not material. Finally, the Court is unaware how damages might reasonably be calculated to compensate plaintiff for Duke's failure to fully perform under this term of the agreement. In light of the foregoing, summary judgment in favor of Duke is appropriate on plaintiff's breach of contract claim and plaintiff's seventh claim for relief for specific performance.

iv.    *Breach of Contract Counterclaim*

The Court next considers Duke's third counterclaim for breach of contract. Duke contends that plaintiff violated the terms of the 1996 agreement when, prior to commencement of this suit, plaintiff contacted third parties and induced them to withhold electronic publishing revenues otherwise owed to Duke in light of plaintiff's assertion that Duke's electronic publication of the journal was in violation of the 1996 agreement. Because, as discussed above, the Court finds as a matter of law that the 1996 agreement permitted Duke during its term to electronically publish the journal and to collect any fees associated therewith, plaintiff's actions to interfere with Duke's collection of fees for electronic publishing constitute a breach of the

9

1996 agreement. Duke is entitled to summary judgment in its favor on this claim and plaintiff is ordered to relinquish any claim to funds owed to Duke and that are currently being withheld by Project Muse, JSTOR, and High Wire Press. Cohn Dec. ¶ 21 [DE 53-1].

## II.  COPYRIGHT & TRADEMARK CLAIMS

Plaintiff's third through seventh claims for relief concern its intellectual property rights in the journal. Plaintiff contends that Duke has infringed its copyrights in the journal by publishing the journal electronically, that plaintiff is entitled to an accounting and disgorgement of all royalties and profits received by Duke from its electronic publication of the journal, and for a declaratory judgment of copyright infringement.

"In order to prove copyright infringement, a plaintiff must show that it owns a valid copyright, and it must establish that the defendant engaged in unauthorized copying of the work protected by the copyright." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002). As the Court has already found that the 1996 agreement permitted Duke to publish and distribute the journal electronically, no copyright infringement has occurred and Duke is entitled to summary judgment in its favor on plaintiff's copyright infringement claim.[1]

In light of the Court's ruling on plaintiff's copyright infringement claim, plaintiff's related claims for accounting and disgorgement and declaratory judgment for copyright

---

[1] Moreover, given plaintiff's knowledge of Duke's conduct and apparent acquiescence, plaintiff's actions at this late date in attempting to assert its copyrights may arguably be estopped by equitable principles. *See Service & Training, Inc. v. Data General Corp.*, 963 F.2d 680, 689-90 (4th Cir. 1992); *Armento v. City of Ashville Downtown Dev. Office*, 1:94CV57, 1996 WL 677119 (W.D.N.C. Mar. 26, 1996) (to be estopped from asserting a copyright infringement claim a plaintiff must have been "aware of the infringing conduct and yet [have] acted in a way that induced the [d]efendants reasonably to rely upon such action to their detriment."). The Court need not reach such issue, however, as it has found that the 1996 agreement authorized Duke to electronically publish and distribute the journal. *See* 4 Nimmer on Copyright § 13.07( "a purported 'consent' should stand or fall as a copyright assignment or license, without regard to the principles of estoppel.").

10

infringement also fail. Regarding plaintiff's sixth claim for relief involving its trademark protection and any threatened false designation of origin, Duke states that it has "no immediate intention of publishing a journal under the name *Social Science History* in 2014." [DE 53 at 19]; *see also* Cohn Dec. ¶ 23 [DE 53-2]. Plaintiff has presented no evidence that Duke is currently engaged in use of its mark, and in this posture plaintiff's trademark claim for false designation of origin is not ripe as there is no live issue currently before the Court. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (citation omitted).

## CONCLUSION

Therefore, for the reasons discussed above, plaintiff's motion for partial summary judgment [DE 42] is GRANTED IN PART and DENIED IN PART. Duke's motion for summary judgment [DE 52] is also GRANTED IN PART and DENIED IN PART.

Summary judgment is entered in plaintiff's favor on its first claim for relief and it is hereby DECLARED that the 1996 publishing and editing agreement between plaintiff and Duke Press terminated on January 1, 2014, and plaintiff may subsequently publish its journal *Social Science History* with the academic press of its choosing. Summary judgment is further entered in favor of plaintiff on Duke's first and second counterclaims.

Summary judgment is entered in favor of Duke on plaintiff's second through seventh claims as well as Duke's third counterclaim. Plaintiff is ORDERED to relinquish any claim to funds currently being withheld by Project Muse, JSTOR, and High Wire Press as a result of plaintiff's claim to electronic publishing or distributing revenues owed to Duke for actions taken pursuant to the 1996 agreement.

As no claims remain for adjudication, the clerk is DIRECTED to enter judgment accordingly and to close the file.

SO ORDERED, this _10_ day of July, 2014.

                                                TERRENCE W. BOYLE
                                                UNITED STATES DISTRICT JUDGE